This appeal concerns the propriety of an attorney-fee award in a partition action. On May 30, 2001, Gina B. King, the owner of a 7/64 interest in approximately 123 acres of real property in Lamar County, filed a complaint seeking a sale for division and distribution of that property. Three of the 23 named defendants in the original complaint, Janet Benton, Henry Allen, and Jennifer B. Pennington, answered the complaint and asserted a counterclaim, giving notice under § 35-6-100, Ala. Code 1975, that they wished to purchase King's interest, as well as the interests of the other defendants, in the property. At King's direction, King's attorney, Ronald H. Strawbridge, moved to withdraw on July 27, 2001. King then hired another attorney, Tonya G. Johnson, who filed her notice of appearance on October 3, 2001.
On December 6, 2001, Strawbridge moved to intervene as a plaintiff, under Rule 24, Ala. R. Civ. P., so that he might protect his lien on the purchase price or the appraised value of the property for his unpaid attorney fee. Strawbridge filed an affidavit in support of his motion, wherein he stated that he had spent several months in an effort to determine the names and addresses of the various tenants in common of the property involved. Benton and Allen did not object to Strawbridge's motion to intervene, and they did not answer his complaint in intervention. The trial court granted Strawbridge's motion on January 29, 2002, and it ordered that, upon the condition attorney fees were awarded in the action, Strawbridge should receive 50% of the total fees, while 25% of the fees would be distributed to Johnson — King's new attorney — and 25% of the fees would be distributed to Jonathan Alex Brown, the attorney for Benton, Allen, and Pennington. Benton and Allen did not at that time raise any objections to the trial court's apportionment of attorney fees.
On July 30, 2002, after the motion to intervene had been granted, King sold her interest in the property to Benton. Benton also purchased the interest of Pennington. King and Pennington both transferred their interests in the property by quitclaim deed.
The case continued, however, and the trial court issued an interlocutory order on April 23, 2004, noting that the property, owned by 24 people,[1] could not be equitably divided. The trial court also found that Benton and Allen had timely and *Page 1064 
properly given notice under § 35-6-100, Ala. Code 1975, of their interest to purchase the property at issue. Benton and Allen together held a 7/8 interest in the property, while the 22 other individuals held, in various proportions, the final 1/8 interest.
The trial court ordered that an appraisal of the property be made and submitted to the court. The property was appraised at $203,000. On July 1, 2004, Benton and Allen paid into the trial court $25,375 as the value of the outstanding 1/8 interest being purchased, and they paid an additional $655 as the fee for the appraisal. They also moved the trial court to prepare a deed to them for the remaining 1/8 interest in the property, to set the amount to be paid to each owner, to determine the amount of attorney fees to be awarded, and to tax those fees and other costs among all owners.
Strawbridge wrote a letter, dated November 15, 2004, to the trial court requesting that he be allowed to present testimony regarding his attorney fee. The trial court replied that it was waiting on an agreed-upon order of settlement from the parties. On December 13, 2004, the trial court issued an order stating that the parties had notified the court that the matter was settled on July 1, 2004, but that they had not yet submitted, per the court's instructions, an agreed-upon order of settlement. The court also paid the overdue appraisal fee at that time from its own funds. On January 7, 2005, the trial court ordered Jonathan Alex Brown, the attorney for Benton and Allen, to appear before the court on January 10, 2005, and to bring all papers and correspondence pertaining to the action. The court also ordered all counsel of record to appear.
Benton and Allen argue in their brief to this court that no hearing took place on January 10, 2005, that the trial court did not receive any evidence regarding attorney fees, and that the trial court simply applied "the traditional" 15% to the total appraised value of the property to determine the amount of the attorney fees awarded. Strawbridge does not specifically deny that no hearing took place, although he notes in his brief to this court that Brown, the attorney for Benton and Allen, at some point did provide the court with the parties' agreed-upon settlement terms.[2] Additionally, Strawbridge argues that the full record has not been placed before this court, implying that a hearing did take place. Neither Benton and Allen nor Strawbridge explain what took place when the trial court ordered the parties to appear before the court on January 10, 2005.
Regardless, on January 11, 2005, the day after the attorneys were scheduled to appear before the trial court, the trial court issued its judgment. In relevant part, the judgment ordered that the attorneys involved in the matter receive the cumulative sum of $30,450, which was 15% of the total appraised value of the property. The trial court further ordered that the attorney fees be distributed pursuant to its January 29, 2002, order, whereby Strawbridge would receive 50%, Brown 25%, and Johnson the remaining 25%. Strawbridge's portion came to $15,225. Benton and Allen have appealed the trial court's award of attorney fees to Strawbridge.[3]
Benton and Allen argue on appeal that the award of attorney fees to Strawbridge *Page 1065 
was improper because the plaintiff, King, had sold her interest in the property being partitioned before the appraisal and the entry of the court's judgment. They also argue that, even if an attorney-fee award is appropriate in this case, the trial court abused its discretion by awarding 15% of the total property value traditionally awarded in partition cases without a hearing directed to the factors concerning the reasonableness of an attorney fee established by Peebles v. Miley, 439 So.2d 137
(Ala. 1983).
Strawbridge, an appellee,[4] argues: (1) that Benton and Allen did not preserve for review their issues regarding the sufficiency of the evidence concerning the award of attorney fees because they did not move for a new trial after the trial court's judgment was entered; (2) that the appeal should be dismissed because the trial court's judgment incorporated the settlement terms of the parties; (3) that attorney fees are proper when the plaintiff conveys her interest in the property during the pendency of an action; (4) that the trial court did not abuse its discretion in the amount of attorney fees it awarded; and (5) that remanding the cause to the trial court for consideration of the factors set out in Peebles is not proper.
Whether attorney fees may be awarded pursuant to § 34-3-60, Ala. Code 1975, is a question of law; consequently, our review is de novo. See, e.g., Alabama State Bar v. Quinn, 926 So.2d 1018
(Ala. 2005) (stating that an appellate court reviews questions of law de novo).
As to whether a trial court has awarded the proper amount of attorney fees, our supreme court has stated that, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." Ex parteEdwards, 601 So.2d 82, 85 (Ala. 1992).
Strawbridge's argument that Benton and Allen did not properly preserve the issues they raise on appeal is not applicable in this case. In Ex parte James, 764 So.2d 557, 559 (Ala. 1999) (plurality opinion), our supreme court observed that, "[i]n a case tried before a jury, to preserve for appellate review a question of the sufficiency of the evidence, a party must raise that question in a Rule 50(a), Ala. R. Civ. P., motion for a judgment as a matter of law, at the close of all the evidence."Id. (citing Barnes v. Dale, 530 So.2d 770, 776-77 (Ala. 1988)). "This principle does not apply in a nonjury case."764 So.2d at 559 (citing Seier v. Peek, 456 So.2d 1079, 1081 (Ala. 1984)). In such a situation,
 "[w]hen findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial."
Rule 52(b), Ala. R. Civ. P.
The Ex parte James court addressed this rule by noting:
 "`Rule 52(b) provides an exemption from the requirement of invoking a ruling by the trial court on the issue of evidentiary insufficiency when written findings of fact are made. The trial court's ruling on the sufficiency of the evidence is implicit in a [judgment] in *Page 1066 
which the trial judge is the trier of the facts. Moreover, by making written findings of fact, the trial judge has had the additional opportunity to reconsider the evidence and discover and correct any error in judgment which he or she may have made upon initial review. Thus, when written findings of fact are made, they serve the same useful purpose as does an objection to the trial court's findings, a motion to amend them, a motion for a new trial, and a motion to dismiss under Rule 41(b), . . . — to permit the trial judge an opportunity to carefully review the evidence and to perfect the issues for review on appeal.'"
764 So.2d at 559 (quoting Ex parte Vaughn, 495 So.2d 83, 87
(Ala. 1986)). Additionally, the court observed that, "when the trial court has made no written findings of fact in a nonjury trial, a party must move for a new trial in order to preserve for review a question relating to the sufficiency or weight of the evidence." 764 So.2d at 559.
In Ex parte James, the trial court, following a nonjury trial, awarded an attorney fee in the amount of $100,000 to one of the parties. Id. Our supreme court held that although the trial court did not make any specific written findings of fact in its final order awarding an attorney fee in the amount of $100,000, the award was, in and of itself, a finding of fact based on arguments made by both parties at trial. Id. The court concluded that there was, therefore, a written finding of fact that preserved for appeal the issue whether the evidence was sufficient, despite the fact that the appellant failed to file any posttrial motions. Id.
The fact that in this case there is no transcript of testimony on the issue of attorney fees supplied in the record, as there was in Ex parte James, does not mean that the trial court's judgment cannot be said to be a written finding of fact.[5]
Having concluded that the case is properly presented before this court procedurally, we now address the substantive merits of Benton and Allen's appeal. As noted above, Benton and Allen argue, in essence, that attorney fees are not authorized by §34-3-60, Ala. Code 1975, when the interest in the property held by the party bringing the suit is sold while the partition action is pending in court. Benton and Allen cite Owens v. Bolt,218 Ala. 344, 118 So. 590 (1928), for this proposition. However, theOwens decision was explained and distinguished by another Alabama supreme court decision the following year, Matthews v.Lytle, 220 Ala. 78, 124 So. 197 (1929). The facts in the case at hand more closely mirror the events in Matthews than they do the events in Owens.
In Owens, the plaintiffs sold their interests in the land to the defendants in the case without the consent of their counsel, and a partition sale never took place. 218 Ala. at 345,118 So. at 591. The plaintiffs' attorney moved to intervene and to proceed with the partition suit, claimed an attorney's lien on the lands, and argued that the case should proceed as though no such conveyance took place. 218 Ala. at 345-46, 118 So. at 591. Essentially, the plaintiffs' attorney wanted the property to be sold for division so that the amount due to him in attorney fees could be ascertained and paid. 218 Ala. at 346, 118 So. at 591. The Owens court held, in part, that because the plaintiffs had sold their interests in the property pending the suit, their attorney consequently did not render any service for the common benefit of the *Page 1067 
joint owners of the property entitling him to compensation from the sale of the common property under the statutes relevant at the time. 218 Ala. at 346, 118 So. at 592. However, the court also held that the attorney held a lien for his work on the interests in the property his clients formerly owned and that proceedings could be held to enforce that lien. 218 Ala. at 347,118 So. at 593.
The facts of Owens are distinguishable from the case at hand, partly because the plaintiffs in Owens never completed the partitioning of their property and no court-ordered sale took place. 218 Ala. at 345, 118 So. at 591. Importantly, the following year the supreme court issued an opinion in Matthewsv. Lytle, supra, addressing a situation directly comparable to the facts we face in this action. In Matthews, an agreement was reached between parties engaged in a partition suit, which provided a method of dividing the property. 220 Ala. at 79,124 So. at 198. The trial court entered a judgment incorporating the terms of the agreement, and because the agreement reserved for determination the attorney fees to be awarded, the court ultimately awarded a fee of $1,000 to each of the three attorneys involved. 220 Ala. at 80, 124 So. at 198. The supreme court observed:
 "Services for the common good are held to include the following: `The preliminary investigation of the title, the preparation of the bill, attending to the issuing of subpoenas, the preparation and entering of decrees, etc.' Robinson v. Robinson, 24 R.I. 222, 52 A. 992, 993 [(1902)]. Again it is said: `Plaintiff's attorneys may have rendered some services in examining the title and preparing such papers as would have been essential to an accurate division of the lands in a friendly suit. Such service benefited the defendant owners as well as the plaintiff, and they may justly be asked to contribute toward paying for them.' Liles v. Liles, 116 Mo.App. 413, 429, 91 S.W. 983, 988 [(1906)]."
Matthews, 220 Ala. at 80, 124 So. at 198. The court went on to hold that, "[i]n effecting a partition or a sale for that purpose, the result is as a matter of law beneficial to all, and the attorney for complainant is due to be compensated out of the common fund for his services in accomplishing it."220 Ala. at 80, 124 So. at 199. The court stated that when a plaintiff "in a partition suit defeats the relief prayed for . . . by a sale to the other tenants in common . . . the attorney cannot recover at all from the common estate, but may recover against the [plaintiff] employing him for services rendered, and to that extent enforce a lien on his separate interest. . . ."220 Ala. at 80, 124 So. at 199.
At first blush this language appears to apply to the case at hand, but Matthews goes on to state that the matter before the trial court was unusual, because the trial court's judgment merely carried into effect an agreement of the parties, which left the matter of attorney fees to the court. Id. The court noted that had the parties not left the matter of attorney fees to the trial court and instead dismissed the case, the attorneys would not be entitled to a fee chargeable to the common property without an agreement to that effect. Id. However, because "the agreement saved for them each respectively the right to fees such as would be compensation for services of common benefit. . . . [I]t is apparent that, as finally executed, it was of common benefit. . . ." 220 Ala. at 80-81, 124 So. at 199. The supreme court concluded that the facts warranted that a $3,000 fee be divided among the parties, with the attorney for the plaintiff receiving 50% of the fee and the attorneys for the defendants jointly receiving 50% of the fee. 220 Ala. at 81, *Page 1068 124 So. at 199. Such a division is almost exactly what occurred in this case, in which the plaintiff sold her property to one of the defendants and an agreement was entered into by the parties to the action. Furthermore, as in Matthews, the parties in this case requested that the trial court award attorney fees. With the exception that one of the attorneys for King, Strawbridge, withdrew as King's attorney before the final division of the property, the situations are virtually identical. However, the withdrawal of Strawbridge is not dispositive in this matter, because Strawbridge had already contributed to the common benefit of the parties by, among other things, his preliminary investigation of the titles held by the more than 20 parties to the suit and his preparing and filing the complaint. Such services benefited the defendant owners as well as the plaintiff, and they may justly be asked to contribute toward paying for those services. 220 Ala. at 80, 124 So. at 198.
Because the contributions of Strawbridge were for the common benefit of all the owners of the property, and because the matter of attorney fees was specifically left to the trial court's discretion by the parties, we hold that the trial court was not wrong under § 34-3-60 in awarding attorney fees to Strawbridge.
Having resolved the issue whether an award of attorney fees is allowed in situations such as this, we now turn to the issue whether the fees awarded in this case are appropriate when the trial court did not conduct any hearing directed to the factors concerning reasonableness established by Peebles v. Miley,
supra.
"It has been consistently held that the awarding of attorneys' fees in partition actions is left to the sound discretion of the trial judge, and, on review, this court will not disturb the award without a showing that the trial judge abused that discretion." Mann v. Mann, 451 So.2d 783, 785 (Ala. 1984) (citing Spiller v. Mackereth, 334 So.2d 859 (Ala. 1976); Kingv. Smith, 247 Ala. 1, 22 So.2d 336 (1945); and Broughton v.Nance, 244 Ala. 499, 14 So.2d 505 (1943)). Furthermore, this court has more recently held that "[w]e recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court and that attorneys should be justly compensated for their efforts rendered for the common benefit of the parties." Jernigan v. Jernigan, 678 So.2d 1169, 1172
(Ala.Civ.App. 1996).
The only party that asked for a hearing on the matter of attorney fees was Strawbridge, despite the fact that Benton and Allen requested the trial court to set the amount of the attorney fees to be awarded. Benton and Allen also made no objection when Strawbridge intervened. In fact, Benton and Allen admit in their brief to this court that the customary fee awarded in partition actions in the 24th Judicial Circuit, where this case took place, is 15% of the total value of the property.
Although Benton and Allen argue on appeal that applying the traditional attorney-fee award in this case is unreasonable, they did not present any evidence indicating that the trial court's judgment was in error and they did not cite any authority stating that a 15% fee is per se too high. Importantly, Benton and Allen did not make a request to the trial court to present any evidence regarding the proper amount of attorney fees to be awarded. From the record, it appears that the only party that did request to present any such evidence was Strawbridge, who filed an affidavit when he intervened in the case stating the amount of time he spent on the matter and who later sent a letter to the trial court requesting a hearing. *Page 1069 
The supreme court has held in divorce cases "that an award of an attorney fee will not be reversed merely because the record contains no evidence to prove the reasonableness of the amount awarded." Ex parte James, 764 So.2d at 560 (citing Hodson v.Hodson, 276 Ala. 227, 160 So.2d 637 (1964)). "`There is a presumption that the "trial court has the knowledge from which it may determine the amount of a reasonable fee for an attorney, even though no evidence is presented as to its reasonableness."'"Ex parte James, 764 So.2d at 560 (quoting Boykin v. Boykin,628 So.2d 949, 952 (Ala.Civ.App. 1993)). In a partition case, this court has observed that "[t]he intimate knowledge of the case by the trial court gave to that court a special advantage to correctly decide the issue [of attorney fees], and we have no right to disturb that decision." Guyton v. Guyton,469 So.2d 640, 642 (Ala.Civ.App. 1985).
In Anderson v. Lee, 621 So.2d 1305, 1307 (Ala. 1993), our supreme court applied the principles set out in Peebles v.Miley to a partition case:
 "Section 34-3-60, Code of Ala. 1975, provides for the court to set a reasonable attorney fee in an action to partition real property and to tax the fee as a part of the costs in the action. In Peebles v. Miley, 439 So.2d 137 (Ala. 1983), we set out the following 12 criteria that the trial court should consider in setting an attorney fee: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. See Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala. 1988); Irons v. Le Sueur, 487 So.2d 1352 (Ala. 1986); Talb, Inc. v. Dot Dot Corp., 559 So.2d 1054 (Ala. 1990); and Shirley v. Mazzone, 591 So.2d 469 (Ala. 1991). Although all of these criteria need not be met, they are available for the trial court to consider in connection with each claim for an award of attorney fees. Graddick v. First Farmers Merchants National Bank of Troy, 453 So.2d 1305 (Ala. 1984)."
The Anderson court ultimately held that in that case an award of a 10% attorney fee was reasonable. Id. In Anderson, two attorneys testified that a 10% fee, or in that case $20,000, was the customary fee charged in that locality for similar legal services. Id. at 1307. Additionally, the attorney whose fees were at issue "testified that he expended 200 hours on [the] case, extending over a period of three years." Id.
Although the supreme court recently stated in Carver v.Foster, 928 So.2d 1017, 1026-27 (Ala. 2005), that, "the reasonableness of an attorney-fee award [in a partition or sale-for-division case] cannot be based solely on an arbitrary percentage of [the] value" of the property involved, this case is distinguishable on several grounds. For example, in this case, it appears that Benton and Allen made no objection to Strawbridge's intervention, filed no answer to his complaint in intervention, did not object to the initial apportionment of attorney fees by the trial court on January 29, 2002, did not request to present evidence regarding attorney fees (though they requested the trial court to award them) and *Page 1070 
did not file any postjudgment motion regarding the sufficiency of the evidence presented to the trial court following its award of attorney fees. Furthermore, although it appears no evidentiary hearing was conducted, there is evidence in the record that indicates that Strawbridge spent "several months" determining who the owners of the property were. Additionally, Benton and Allen admit in their brief to this court that a 15% attorney fee is traditionally awarded in a partition case in their locality. We can assume that the trial court in this case was aware of the law and the relevant factors to apply in determining the amount of attorney fees to award. Considering that the trial court had a special advantage to correctly decide the issue, that there is a lack of any contrary evidence in the record, and the fact that Benton and Allen appear to have made no effort at the trial court level to present any evidence to that court concerning attorney fees, we cannot decide that the award of attorney fees in the amount of 15% was, in this case, unreasonable.
We affirm the judgment of the trial court.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON and BRYAN, JJ., concur in the result, without writing.
MURDOCK, J., dissents, without writing.
[1] Several original defendants had been dismissed by this time because they were deceased; other defendants had been added when they were discovered to hold an interest in the property.
[2] The entirety of those terms does not appear to be in the record.
[3] This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
[4] King was a plaintiff in the court below, but Strawbridge was the only party to file an appellee's brief with this court.
[5] Furthermore, if we assume that there was no hearing held concerning attorney fees, logically there could not be any transcript of that hearing in the record.